UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

JANE DOE NO. 6,                                    CASE NO.:    19-CV-14487

     Plaintiff,                                   Rosenberg/Maynard

vs.

SCHOOL BOARD OF HIGHLANDS COUNTY,
FLORIDA,

     Defendant.
_____/

## DEFENDANT'S MOTION FOR RECONSIDERATION OF DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT (DE 46) AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, the School Board of Highlands County, Florida, by and through their undersigned attorneys, pursuant to Federal Rule of Civil Procedure 59(e), and hereby file this Motion for Reconsideration of Defendant's Motion for Summary Judgment as to Plaintiff's Amended Complaint (DE 24), and Incorporated Memorandum of Law, and would state as follows:

1.     The Plaintiff has filed a one count amended complaint (DE 24) alleging a violation of Title IX.  The Plaintiff, Jane Doe, alleges that she was sexually assaulted in kindergarten and first grade, during the 2004-2006 school years (DE 24 ¶ 16, 17).

2.     The Defendant filed a Motion for Final Summary Judgment (DE 46) in part due to a statute of limitations argument, said Motion was denied via an omnibus Order (DE 53) on August 30, 2020.

1

3.      Since the date of the aforementioned Motion and Order, the Florida Supreme Court has issued an intervening change in controlling law on October 1, 2020, in the attached opinion of <u>R.R., et al. v. New Life Community Church of CMA, Inc., et al.</u>, No. SC18-962 (Fla. October 1, 2020).

4.      Three grounds justify reconsideration of an earlier order under Rule 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." <u>Williams v. Cruise Ships Catering & Serv. Int'l, N.V.</u>, 320 F. Supp. 2d 1347, 1357–58 (S.D. Fla. 2004); <u>Arthur v. King</u>, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam); <u>Sanzone v. Hartford Life &Acc. Ins. Co.</u>, 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007).

5.      On October 1, 2020, the Florida Supreme Court in <u>R.R.</u> expressly disapproved of <u>Drake v. Island Cmty. Church</u>, 462 So. 2d 1142 (Fla. 3d DCA 1985), a case relied upon by Plaintiff in opposition to the Motion.

6.      Accordingly, pursuant to <u>R.R.</u> the Defendant would respectfully request this Court reconsider its denial of its Motion for Summary Judgment on the statute of limitations issue, and enter Final Summary Judgment in favor of the Defendant finding that this lawsuit is barred by the statute of limitations.

WHEREFORE, the Defendants respectfully request this Honorable Court Grant this Motion, and for any further relief this Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED, that a true and correct copy of the foregoing was furnished electronically to the Clerk of Court, this 1st day of October, 2020, by using the CM/ECF system to all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

CARMAN, BEAUCHAMP, SANG, GONZALES & PHILPOTT, P.A.
1850 Lee Road, Suite 334
Winter Park, Florida 32789
(407) 622-7888
(407) 622-7890 (FAX)

/s/Allen C. Sang
ALLEN C. SANG, ESQUIRE
Florida Bar No.: 603960
acs@carmanbeauchamp.com
Attorneys for Defendant

# Supreme Court of Florida

————————

No. SC18-962

————————

**R.R., et al.,**
Petitioners,

vs.

**NEW LIFE COMMUNITY CHURCH OF CMA, INC., et al.,**
Respondents.

October 1, 2020

MUÑIZ, J.

Although this case arises in the troubling context of child sexual abuse, it is ultimately about the separation of powers and the proper role of courts in applying statutes of limitations.  The Legislature has adopted a comprehensive statutory framework to govern limitations periods, including provisions that address when those periods begin to run (accrual) and when they are suspended from running (tolling).  Several of the Legislature's enactments protect minors in particular.  One statutory provision specifies criteria for the tolling of claims involving minors.  Other statutory provisions specifically address limitations periods for claims involving defined abuse committed against minors.  The difficult questions about

how best to balance the interests of minors with the interests served by statutes of limitations, especially in cases like this one, have not escaped the Legislature's attention.

We accepted jurisdiction here to resolve a certified district court conflict over whether courts can go beyond the statutory framework and adopt a special, judge-made rule to govern the accrual of tort claims where the would-be plaintiff is a minor.  In the case under review, the Fifth District aligned itself with a decision of the Second District holding that the accrual of such claims must be governed by the statutes enacted by the Legislature.  *See R.R. v. New Life Cmty. Church*, 248 So. 3d 232 (Fla. 5th DCA 2018) (*New Life*); *D.H. v. Adept Cmty. Svcs., Inc.*, 217 So. 3d 1072 (Fla. 2d DCA 2017) (*2nd DCA Adept*), *quash, in part by D.H. v. Adept Cmty. Svcs., Inc.*, 271 So. 3d 870 (Fla. 2018) (*S. Ct. Adept*).  By contrast, the Third and Fourth Districts have gone outside the statutory framework and held that a minor's claims do not accrue until the minor reaches the age of majority or until a proper representative knew or should have known of the minor's claims.  *See Drake v. Island Cmty. Church*, 462 So. 2d 1142 (Fla. 3d DCA 1985); *Doe v. Nur-Ul-Islam Acad.*, 217 So. 3d 85 (Fla. 4th DCA 2017).

On the conflict issue, we approve the Fifth District's decision in *New Life*. We also approve the reasoning from the Second District in *2nd DCA Adept* on the conflict issue, and we disapprove the Third and Fourth Districts' decisions in

- 2 -

*Drake* and *Nur-Ul-Islam* to the extent they are inconsistent with our decision here. We also explain why our decision in *Hearndon v. Graham*, 767 So. 2d 1179 (Fla. 2000), does not apply to delay the accrual of petitioners' negligence and respondeat superior claims.  We decline to address the remaining issues raised by petitioners, as those issues are outside the scope of the certified conflict.[1]

## FACTS AND PROCEDURAL BACKGROUND

### A.    The Facts

S.B. and R.R., the petitioners here, allege that Daniel Heffield sexually abused them as children.  The petitioners maintain that the abuse was connected to and facilitated by Daniel's employment by New Life Community Church, which also employed Daniel's parents, Ron and Priscilla Heffield.  The abuse allegedly occurred during babysitting sessions when Daniel would purport to "punish" the children by holding them in his lap and molesting them.  S.B. alleges multiple acts of molestation that occurred from 1998 to 2005, when she was age four through eleven.  R.R. alleges a single act of molestation in 1996, when she was four.

S.B. maintains that she did not tell anyone about Daniel's alleged molestation of her until after she turned eighteen.  She acknowledged in her

---

[1]. Specifically, we do not address petitioners' arguments that their claims were timely under section 95.11(7) or 95.11(9), Florida Statutes (2019), or that the doctrine of equitable estoppel should preclude respondents' reliance on a statute of limitations defense.

deposition that she never forgot about the abuse.  By contrast, R.R. claims that she told her parents about Daniel's act of molestation within a week of its occurrence. R.R. says that her father then made an angry phone call to Daniel's father, who put Daniel on the phone to apologize to R.R.

In 2013, Daniel pleaded guilty to federal child pornography charges.  Those charges apparently did not involve the alleged abuse of S.B. and R.R.  Daniel is now serving a lengthy prison sentence for his crimes.

S.B. and R.R. filed the lawsuit underlying this case in September 2014. Relevant for our purposes here, the complaint brought claims against Daniel's parents, New Life Community Church, and two institutional affiliates of New Life. S.B. and R.R. broadly alleged that these defendants long knew of Daniel's propensity to sexually abuse children but did nothing to stop him or to warn others who could have.  The claims at issue here are negligence-based claims asserted against all of these defendants (the respondents in this case) and a respondeat superior claim against New Life.  S.B. and R.R.'s complaint also included claims directly against Daniel, but those are not before us.

## B.    The Decisions Below

The defendants (other than Daniel) moved for summary judgment on the ground that S.B.'s and R.R.'s negligence and respondeat superior claims were untimely.  They argued that, under section 95.11(3)(a) and (p), Florida Statutes,

- 4 -

those claims were governed by a four-year statute of limitations.  They further argued that, under section 95.031(1), S.B.'s and R.R.'s claims accrued at the time of their injuries—no later than 2005 in S.B.'s case and 1996 in R.R.'s case. Finally, they argued that there were no statutory grounds for any delayed accrual of the claims or for tolling the limitations period governing those claims.

S.B. and R.R. opposed summary judgment on multiple grounds.  They principally relied on this Court's decision in *Hearndon*.  We describe *Hearndon* in detail later, but for now it suffices to say that we there applied a "delayed discovery" rule to postpone the accrual of claims in certain limited circumstances involving childhood sexual abuse.  S.B. and R.R. argued that, under the rule of *Hearndon*, their claims did not accrue until they understood the nature of what Daniel had done to them.  Only upon reaching the age of "sexual maturity," they said, did they realize that Daniel's molestation constituted sexual abuse, rather than legitimate punishment.  Each plaintiff allegedly came to the necessary awareness of Daniel's abuse approximately in 2012, an accrual date which (they argue) would render their 2014 lawsuit timely filed.

S.B. and R.R. also offered several fallback arguments.  One of those arguments—that their incapacity to sue until the age of majority "tolled" the running of the statute of limitations—is similar to the certified conflict issue here.

- 5 -

Their other arguments relied on sections 95.11(7) and 95.11(9) and on equitable
estoppel.

Section 95.11(7) provides:

> FOR INTENTIONAL TORTS BASED ON ABUSE.—
> An action founded on alleged abuse, as defined in s.
> 39.01, s. 415.102, or s. 984.03, or incest, as defined in s.
> 826.04, may be commenced at any time within 7 years
> after the age of majority, or within 4 years after the
> injured person leaves the dependency of the abuser, or
> within 4 years from the time of discovery by the injured
> party of both the injury and the causal relationship
> between the injury and the abuse, whichever occurs later.

Section 95.11(9) provides:

> SEXUAL BATTERY OFFENSES ON VICTIMS
> UNDER AGE 16.—An action related to an act
> constituting a violation of s. 794.011 involving a victim
> who was under the age of 16 at the time of the act may be
> commenced at any time.  This subsection applies to any
> such action other than one which would have been time
> barred on or before July 1, 2010.

The trial court rejected S.B.'s and R.R.'s arguments and entered summary
judgment in favor of the respondents.  The legal analysis in the court's written
order focused exclusively on the conclusion that the *Hearndon* delayed discovery
rule did not apply to S.B.'s and R.R.'s negligence-based and respondeat superior
claims.  The court reasoned that, under what it understood to be controlling
authority, the *Hearndon* rule delays accrual only as to intentional tort claims
against the perpetrator of sexual abuse.  The court "reluctantly" concluded that

S.B.'s and R.R.'s claims accrued at the time of injury and that the claims were therefore untimely.

The Fifth District affirmed the trial court's order in a one-paragraph opinion. *New Life*, 248 So. 3d at 232. Rather than conduct its own analysis, the district court simply aligned itself with the Second District's opinion in *2nd DCA Adept*. The district court also certified conflict with the Third and Fourth District's decisions in *Drake* and *Nur-Ul-Islam*. *Id*. at 232-33.

At the time the Fifth District issued the decision under review, this Court had accepted jurisdiction to review *2nd DCA Adept* to resolve the conflict with *Drake* and *Nur-Ul-Islam*. However, we ultimately decided *S. Ct. Adept* on other grounds and left the conflict issue unresolved. *S. Ct. Adept*, 271 So. 3d at 886.

## ANALYSIS

Disputes over the timeliness of a claim can present three distinct issues. The first is to determine the statutory limitations period applicable to a given cause of action. The second is to determine the event that started the running of the statute of limitations—in other words, to determine when the cause of action *accrued* for purposes of starting the limitations period. And the third is to determine whether a statutory tolling provision existed that suspended the running of the limitations period for any length of time. *See generally Hearndon*, 767 So. 2d at 1184-85 (explaining the difference between accrual and tolling). To give effect to the

legislative will, it can be important not to view any of these issues in isolation. Limitations periods have meaning only in relation to when they begin and when they are free from any required tolling.

The focus of this case is accrual, the point at which a limitations period begins to run.  As we must, we examine this issue in the context of the overall statutory framework governing limitations periods.  We begin with the conflict issue, which has to do with the accrual of minors' claims generally.  We then turn to petitioners' argument that the accrual of their negligence-based claims and respondeat superior claim is governed by the judge-made delayed accrual rule that this Court applied in *Hearndon*.

A.     The Conflict Issue

Section 95.031, Florida Statutes (2019), says that, "except as provided in" statute, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues."  Section 95.031(1) then goes on to say that "[a] cause of action accrues when the last element constituting the cause of action occurs."  There is no dispute that, under this test, negligence and respondeat superior claims like the ones at issue here would accrue at the time of injury (that is, when the sexual abuse was inflicted).

There are provisions in chapter 95, Florida Statutes (2019), that mandate a delayed discovery accrual rule for certain causes of action.  "The 'delayed

- 8 -

discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." *Hearndon*, 767 So. 2d at 1184.  In *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002), we explained that the *only* statutory bases for the delayed discovery rule are in "cases of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse." *Id*. at 710.  The last item on that list is a reference to section 95.11(7), which we quoted earlier.  To be clear, the conflict issue in this case has nothing to do with section 95.11(7).  The courts below determined that section 95.11(7) does not apply to S.B.'s and R.R.'s negligence and respondeat superior claims, and we do not address that conclusion here.

There is no statutory provision that delays the accrual of claims across-the-board in cases where the would-be plaintiff is a minor.  Instead, to deal with such claims, the Legislature in 1990 enacted a detailed *tolling* provision.  *See* Ch. 90-105, §1, Laws of Fla.  Remember, accrual and tolling are distinct concepts.  "The 'tolling' of a limitation period would interrupt the running thereof *subsequent to accrual*." *Hearndon*, 767 So. 2d at 1185 (emphasis added).

Section 95.051(1)(i), Florida Statutes (2019), provides:

> The running of the time under any statute of limitations [except as to provisions not relevant here] is tolled by:…[t]he minority or previously adjudicated incapacity of the person entitled to sue during any period of time in

> which a parent, guardian, or guardian ad litem does not
> exist, has an interest adverse to the minor or
> incapacitated person, or is adjudicated to be incapacitated
> to sue; except with respect to the statute of limitations for
> a claim for medical malpractice as provided in s. 95.11.
> In any event, the action must be begun within 7 years
> after the act, event, or occurrence giving rise to the cause
> of action.

This provision undoubtedly is meant to address the potentially harsh consequences of applying statutes of limitations to causes of action belonging to minors. As we will explain, it is significant that the Legislature chose to address this issue by adopting a tolling provision, rather than through a delayed accrual provision. And, to be clear, petitioners do not argue that their claims qualify for tolling under section 95.051(1)(i).

Notwithstanding these statutory provisions (which establish the default rule for accrual and the limited tolling rule for claims involving minors), the Fourth District in *Nur-Ul-Islam* held that "the statute of limitations period begins to run against an injured minor when the minor's parents knew or should have known about the cause of action or the minor reaches the age of majority." *Nur-Ul-Islam*, 217 So. 3d at 88. To reach this conclusion, the Fourth District did not rely on any statutory delayed accrual provision. Instead, the court based its holding on the fact that, as reflected in Florida Rule of Civil Procedure 1.210(b), a minor may not bring suit on his or her own behalf. The court reasoned that "an adult must bring the action, so the adult must have knowledge of the injury." *Id*. at 89. Notably,

- 10 -

although *Nur-Ul-Islam* itself involved allegations of childhood sexual abuse, the Fourth District's delayed accrual rule on its face would apply to *any* tort claim belonging to a minor.

The Fourth District's analysis relied heavily on the Third District's decision in *Drake*, another case involving the alleged sexual abuse of a minor.  In *Drake*, the Third District held that "the statute of limitations could not begin to run against the minor child in the present case until the parent knew or reasonably should have known those facts which supported a cause of action."  *Drake*, 462 So. 2d at 1144. Like the Fourth District in *Nur-Ul-Islam*, the Third District in *Drake* cited no statutory authority for this holding.  The court relied on rule 1.210(b) and on an analogy to delayed accrual in medical malpractice cases involving minors.  The Third District also invoked the "elementary" principle that "[t]here must be some person capable of suing or being sued upon the claim in order for the statute [of limitations] to begin to run."  *Id*. (quoting Berger v. Jackson, 23 So. 2d 265, 269 (Fla. 1945)).  However, the case from which the Third District derived that principle, *Berger v. Jackson*, 23 So. 265 (Fla. 1945), had nothing to do with delayed accrual for a minor's cause of action.  *Berger* was a probate case in which this Court held that "where a cause of action accrues after the death of the person against whom it lies, the limitation does not begin to run until there is a grant of administration in the estate."  *Id*. at 269.

This brings us to the case under review (and to the certified conflict).  Recall that the Fifth District here simply aligned itself with the Second District's decision in *2nd DCA Adept*.  As we do here, the Second District in *2nd DCA Adept* confronted the question how to determine the timeliness of a claim brought on behalf of minor plaintiffs.  The Second District rejected the judge-made delayed accrual rule of *Nur-Ul-Islam* and *Drake*.  *2nd DCA Adept*, 217 So. 3d at 1079.  The court instead applied the statutory default rule of section 95.031(1), which says that a cause of action accrues when its last element occurs.  *Id.*

The Second District viewed this result as dictated both by the statutory text and by this Court's decision in *Davis*, which we will get to in a moment.  The court understood *Davis* to stand for the proposition that, "unless another statute provides differently, courts applying a statute of limitations must follow the default rule" of section 95.031(1).  *Id.* at 1078.  According to the Second District, under this Court's interpretation of section 95.031(1), "the existence of a person who can bring the claim on the minor's behalf is not relevant to the question of accrual." *Id.* at 1079.

The Second District emphasized that its holding did not "leave a minor's access to a legal remedy on an accrued cause of action without protection from the running of the statute of limitations."  *Id.*  But the court said that such protection must come from the tolling provision adopted by the Legislature (section

95.051(1)(i))—not from a judge-made delayed accrual rule.[2]  We conclude that the Second District's analysis is exactly right.

Stepping back, we note again that the district courts in *Nur-Ul-Islam* and *Drake* did not have a statutory basis for their delayed accrual for minors rule.  The courts did not purport to be engaging in statutory interpretation.  Rather, the courts undertook a form of lawmaking.  The Third and Fourth Districts understood themselves as having the authority to adopt a common law delayed accrual rule for minors as an overlay on the statutory framework in chapter 95.

That approach to the courts' authority in the statute of limitations context is no longer an option in light of this Court's decision in *Davis.*  There we were asked to adopt a delayed discovery rule for claims of breach of fiduciary duty, conversion, civil conspiracy, and unjust enrichment.  *Davis*, 832 So. 2d at 709.  We declined, even though the plaintiff seeking the delayed discovery rule was "an elderly woman who suffers from senile dementia."  *Id*. at 708 (quoting *Monahan v. Davis*, 781 So. 2d 436, 437 (Fla. 4th DCA 2001)).  We noted that the Legislature had enacted delayed accrual rules for specific causes of action and that those causes of action did not include the *Davis* plaintiff's claims.  We therefore considered ourselves bound to apply the statutory default rule "that a cause of

---

2.  Again, the petitioners do not argue that they meet the criteria for tolling under this statute.

action accrues or begins to run when the last element of the cause of action occurs." *Id*. at 709.  Driving home our point, we said that "[t]o hold otherwise would result in this Court rewriting the statute, and, in fact, obliterating the statute." *Id*. at 711.

The reasoning underlying our decision in *Davis* is dictated by basic principles of statutory interpretation and, more broadly, of separation of powers. To give proper effect to statutes of limitations, courts must also faithfully apply the accrual and tolling rules prescribed by the Legislature.  "[A]ny period of limitation is utterly meaningless without specification of the event that starts it running." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 199 (1997) (Scalia, J., concurring in part and concurring in the judgment).  Here, the Legislature adopted an unambiguous statutory default rule for accrual that applies in all cases "except as provided" in statute.  § 95.031, Fla. Stat.

The statutory framework leaves no room for supplemental common law accrual rules.  When a "statute purports to provide a comprehensive treatment of the issue it addresses, judicial lawmaking is implicitly excluded."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 96 (2012). Put differently, given the comprehensive statutory framework governing accrual, "[t]o supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926); *see also S. Ct. Adept*, 271 So. 3d at 886 (Canady, J.,

dissenting) ("The accrual doctrine should not be manipulated when the Legislature has clearly pronounced what the exceptions are and are not.").

Going outside the statutory framework for accrual would have been enough on its own to doom the Third and Fourth Districts' judge-made accrual rule. But we must also observe that the rule directly conflicts with the Legislature's express policy preference on how best to address the issue of minors and statutes of limitations.[3] The Legislature chose to adopt a tolling rule for minors, not a delayed accrual rule. *See* § 95.051(1)(i). And the specific rule it adopted tied tolling to situations where a conflict-free, competent legal representative "does not exist." Under the Legislature's chosen rule, the existence of a representative is what matters—the representative's knowledge of the cause of action is irrelevant.

Even more fundamentally, the Legislature's enactment of this tolling provision shows that a minor's cause of action can *accrue* even though the minor does not have a legal representative at all. Tolling rules kick in *after* a claim has accrued; unless a cause of action has accrued, there is no limitations period to toll. This concept is clearly reflected in the text of section 95.051(1)(i), which refers to the "minority" of "the person entitled to sue" at a time when a proper legal representative "does not exist." The Third and Fourth Districts' delayed accrual

---

3. In fairness to the Third District, *Drake* preceded the Legislature's enactment of the statutory tolling provision for minors.

rule for minors—whatever its merits as a matter of policy—goes against the Legislature's statutorily expressed will.

For all of these reasons, on the conflict issue, we approve the Fifth District's decision in *New Life*.

## B.    *Hearndon*

Although it is not the subject of the certified conflict, we will address petitioners' closely related argument that their negligence and respondeat superior claims are subject to delayed accrual under our decision in *Hearndon*.  There we held that "the delayed discovery doctrine applies to the accrual of the instant cause of action based on a claim of childhood sexual abuse accompanied by traumatic amnesia." *Hearndon*, 767 So. 2d at 1186.  The "instant cause of action" in *Hearndon* was an intentional tort claim brought by an alleged sexual abuse victim against the perpetrator.  *Id*. at 1181.

Our Court applied the delayed discovery doctrine in *Hearndon* even though the Legislature had not expressly authorized it for the cause of action at issue in that case.  We reasoned that sexual abuse often results in memory loss, that delayed discovery was an established legal doctrine, and that "it would seem patently unfair to deny its use to victims of a uniquely sinister form of abuse." *Id*. at 1186.  We acknowledged the statutory default rule for accrual in section 95.031. *Id*. at 1185.  But then we said that, while the Legislature had limited the instances

where tolling is permitted, it "did not likewise limit the circumstances under which accrual may have been delayed." *Id*. We offered no analysis to support that assertion, which is contradicted by the statutory text.

On this last point—the authority of courts, including this Court, to go outside the statutory framework governing accrual—*Hearndon* and *Davis* cannot be reconciled. *Davis* is both later decided and correct. For the reasons we have already explained, *Davis* rightly held that the text and structure of chapter 95 require that delayed accrual be limited to those circumstances provided for in statute. In *Davis* itself, rather than explicitly acknowledge that we were departing from *Hearndon* on this point, we dealt with the problem by saying that "*Hearndon* is limited to the specific facts in that case." *Davis*, 832 So. 3d at 712.

Nonetheless, this case does not require us to decide the continuing validity of *Hearndon*, because the petitioners here do not qualify for the rule of that case. We expressly limited our holding in *Hearndon* to "the instant cause of action" (an intentional tort brought against the alleged perpetrator)[4] and to cases where there is "childhood sexual abuse accompanied by traumatic amnesia." *Hearndon*, 767 So. 2d at 1186. Petitioners' claims here meet neither criterion. Accordingly, to give

_____

4. This is how district courts have understood *Hearndon*. *See W.D. v. Archdiocese of Miami*, 197 So. 3d 584, 588 (Fla. 4th DCA 2016) ("*Hearndon*'s delayed discovery doctrine applies only to intentional tort claims against the perpetrator of the sexual abuse"); *Cisko v. Diocese of Steubenville*, 123 So. 3d 83, 84 (Fla. 3d DCA 2013) (same).

the petitioners the benefit of nonstatutory delayed accrual, we would have to

expand the rule we established in *Hearndon*.  Given *Hearndon*'s shaky

foundation—and in light of *Davis* and the larger principle that we are bound by the

statutory framework governing accrual—we decline to do so.

## CONCLUSION

We approve the Fifth District's decision in *New Life*.  We also approve the

reasoning in the Second District's decision in *2nd DCA Adept* to the extent it is

consistent with our decision here.  We disapprove the Third and Fourth Districts'

decisions in *Drake* and *Nur-Ul-Islam* to the extent they are inconsistent with this

opinion.  We decline to extend the delayed discovery rule of *Hearndon* to

petitioners' negligence and respondeat superior claims.  And we decline to address

petitioners' remaining issues, all of which are unrelated to the certified conflict

issue.

It is so ordered.

CANADY, C.J., and LAWSON and COURIEL, JJ., concur.
LABARGA, J., concurs in part and dissents in part with an opinion, in which
POLSTON, J., concurs.
GROSSHANS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND,
IF FILED, DETERMINED.

LABARGA, J., concurring in part and dissenting in part.

I concur with the majority's conclusion that delayed discovery does not apply to R.R.'s negligence claims, but I disagree with its holding that it does not apply to the respondeat superior claims at issue.  Further, I conclude that S.B.'s negligence claims are timely because, independent of the delayed discovery doctrine, they did not accrue until she reached the age of majority.

Accrual is a term that is used to describe when a cause of action ripens and the statute of limitations begins to run.  *See* § 95.031, Fla. Stat. (2019) ("[T]he time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.").  We have acknowledged that "[t]here must be some person capable of suing or being sued upon the claim in order for the statute to begin to run."  *Berger v. Jackson*, 23 So. 2d 265, 269 (Fla. 1945).[5]

The case before us presents a conundrum that courts have considered and reached different conclusions.  According to the plain language of the accrual statute, a minor's claim accrues, and the statute of limitations begins to run, at the time that the last element of the claim arises (in this case, the sexual abuse).  Minors, however, are not legally permitted to file claims on their own behalf.  To address this concern, the Legislature has codified the delayed discovery rule to

_____

5.  Though the majority distinguishes the facts of *Berger* from the current matter, the legal proposition that a claim cannot proceed until there is a person capable of acting on it remains intact.

delay accrual of certain causes of action, the pertinent one to the case before us being intentional torts based on abuse.  § 95.11(7), Fla. Stat. (2019).[6]

There is no dispute that the minors' causes of action against Daniel may proceed under section 95.11(7).  However, there is no statutory provision that delays the accrual of the minors' causes of action against the defendants, which arise from the same underlying abuse that establishes their claims against Daniel. The majority contends that the Legislature has addressed this issue by enacting a tolling statute which states:

> The running of the time under any statute of limitations . . . is tolled by: . . . [t]he minority . . . of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor . . . or is adjudicated to be incapacitated to sue. . . . In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

§ 95.051(1)(i), Fla. Stat. (2019).  The majority explains that a parent or guardian's knowledge, or lack thereof, is not relevant to the tolling statute.  The majority then concludes that the tolling statute is not relevant to when the minors' claims accrued because tolling and accrual are distinct concepts.  The majority further determines

---

6. The majority declines to consider whether the minors' claims are timely under this statute because it is not the basis for conflict jurisdiction.  However, this Court has long recognized that once we accept conflict jurisdiction, we can consider any issue that was considered by the lower court and argued before us. *Savoie v. State*, 422 So. 2d 308, 312 (Fla. 1982).  Therefore, because Petitioners briefed this issue, I will consider it.

that delayed discovery does not apply to delay the accrual of the minors' claims because they do not fall within the narrow facts of *Hearndon*. Therefore, according to the majority, the minors, through no fault of their own, are precluded from seeking relief against the defendants.  However, as the majority astutely notes, "To give effect to the Legislative will, it can be important not to view any of these issues in isolation."  As I will explain, the doctrine of delayed discovery applies to the minors' respondeat superior causes of action because the Legislature has codified the delayed discovery rule to apply to intentional torts based on abuse. Further, I will explain how, under delayed accrual, S.B.'s negligence claims are timely.

### Delayed Discovery

Contrary to the majority's conclusion, delayed discovery is a doctrine that this Court has long applied to remedy apparent gaps in accrual statutes.  We have recognized that delayed discovery "is merely a recognition of the fundamental principle that *regardless of the underlying nature of a cause of action*, the accrual of same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights."  *Creviston v. Gen. Motors Corp.*, 225 So. 2d 331, 334 (Fla. 1969) (emphasis added).  This Court explained in *Hearndon* that "[t]he Florida Statutes do not impede . . . the delay of accrual of the cause of action."  *Hearndon*, 767 So. 2d at 1185.

This Court in *Davis* subsequently limited the extension of delayed discovery beyond statutorily enumerated causes of action to the narrow facts presented in *Hearndon*.  The opinion stated:

> While we applied the delayed discovery doctrine to causes of action arising out of childhood sexual abuse and repressed memory in *Hearndon*, we did so only after considering the unique and sinister nature of childhood sexual abuse, as well as the fact that the doctrine is applicable to similar cases where the tortious acts cause the delay in discovery.

*Davis*, 832 So. 2d at 712.

Though *Davis* limited *Hearndon* to its facts, it is unclear how extending the delayed discovery doctrine to intentional torts based on abuse under respondeat superior would be inconsistent with *Davis*.  The Middle District of Florida has recently applied delayed discovery to a minor's cause of action for childhood sexual abuse against the abusers' employers.  *See Doe v. St. John's Episcopal Parish Day School, Inc.*, 997 F. Supp. 2d 1279, 1287 (M.D. Fla. 2014).  In *St. John's Episcopal*, the plaintiff was allegedly sexually and physically abused by employees of a church and an affiliated day school, which was operated by the church.  *St. John's Episcopal*, 997 F. Supp. 2d at 1282.  Both the school and the church were owned and operated by a larger entity.  *Id.*  The plaintiff suffered traumatic amnesia and had no memory of the abuse until it resurfaced many years later in 2011.  *Id.*  The plaintiff sued the church defendants for sexual abuse of a child perpetrated by its employees under the theory of respondeat superior.  *Id.*  The Middle District of

Florida concluded that, even after *Cisko* and *Davis* limited the doctrine of delayed

discovery to the facts of *Hearndon*, respondeat superior claims based on childhood

sexual abuse may still proceed under the doctrine because they are based on an

intentional tort. *Id.* at 1287 ("[T]his claim is grounded in intentional tort to which

the delayed discovery doctrine applies under *Hearndon* and *Cisko*, and is not time-

barred."). The court reasoned that "because the liability of Church Defendants

would be vicarious and based solely on the alleged acts of the abusers/perpetrators,

it necessarily falls within the narrow application of the delayed discovery doctrine

in *Hearndon*." *Id.* I find the reasoning of the Middle District persuasive. Like the

plaintiff in *St. John's Episcopal*, R.R. and S.B. suffered from the same "uniquely

sinister" abuse that the plaintiff in *Hearndon* experienced and, importantly, the

allegations of abuse against Daniel would establish vicarious liability for Daniel's

employer if, as the minors allege, the abuse occurred within the scope of his

employment.

     The minors were not aware of the tortious nature of Daniel's conduct until

after the exhaustion of the statutory period in section 95.11(3)(p). Like the

defendant in *St. John's Episcopal*, who employed the tortfeasors when the wrongful

conduct occurred, Daniel was employed by the church when he abused the minors.

Therefore, under the rationale of *Hearndon* and *Davis*, I would extend delayed

discovery to the minors' causes of action against those defendants who can be

proven to have employed Daniel when he engaged in the alleged abuse.  This would not be inconsistent with *Davis*'s limiting of *Hearndon* because, as I have explained, Daniel's conduct during his status as a church employee is "a situation similar to the statutory circumstances to which the [delayed discovery] doctrine applies." *Davis*, 832 So. 2d at 710 (citing *Hearndon*, 767 So. 2d at 1185-86).

I believe that the lack of memory of the abuse due to traumatic amnesia is not relevant where the victims are children who do not appreciate the sinister nature of the abuse they suffered.  The Legislature has recognized the injustice of this scenario and has codified the delayed discovery doctrine to extend to intentional torts based on abuse.  § 95.11(7), Fla. Stat.  I see no reason why the statute should not apply to the defendants who knew of the allegations of abuse and continued to allow Daniel access to S.B. through his duties with the church.

Delayed Accrual

Moreover, beyond the application of the delayed discovery doctrine, I believe that S.B.'s negligence and respondeat superior claims are timely because they did not accrue until she reached the age of majority.  Accordingly, I disagree with the majority's disapproval of the holdings in *Drake* and *Nur-Ul-Islam*.

Delayed accrual is a broad concept that courts apply to situations where a claim accrues sometime after the last element constituting a cause of action occurs. The concept derives from the long-held principle that "[t]here must be some person

capable of suing or being sued upon the claim in order for the statute to begin to run." *Berger*, 23 So. 2d at 269.  Delayed discovery is a subset of delayed accrual. As explained above, the Legislature has codified causes of action to which delayed discovery applies; however, no statute exists that explicitly addresses delayed accrual.  Florida Rule of Civil Procedure 1.210 does not allow minors to bring suits on their own behalf; therefore, until they reach the age of majority, they must rely on a parent or guardian to bring actions for them.  It follows, therefore, that a minor's claims do not accrue until a legal representative has knowledge of the facts giving rise to the cause of action or the minor reaches the age of majority and can enforce his or her own rights.

The majority insists that the tolling statute, rather than the concept of accrual, addresses the fact that minors cannot bring claims on their own behalf until they reach the age of majority.  However, this approach ignores the majority's own reasoning that accrual and tolling are distinct concepts, the latter of which addresses situations where the statute of limitations is paused *after* a claim accrues. Further, the majority's conclusion that the tolling statute is the Legislature's chosen remedy for cases where the plaintiff is a minor would render the language pertaining to minors in section 95.11(7) superfluous.  The majority's inference that the tolling statute presupposes that minors' causes of action accrue at the time of the last element of the cause of action strains the plain language of the statute and

disregards the underlying rationale behind delayed accrual.  Because accrual and tolling are distinct concepts, a delayed accrual rule which requires a parent or qualified representative to have knowledge of a minor's claim before it accrues can happily coexist with a tolling statute which contains no such requirement.

S.B.'s circumstances perfectly illustrate the rationale behind delayed accrual. S.B. was sexually abused as a young child.  She was unaware of the nature of the abuse when it occurred because Daniel told her that he was punishing her for misbehaving.  Not realizing that she had been sexually abused, S.B. did not think to tell her parents about the incidents.  S.B.'s parents had no reason to suspect that she had been abused and therefore did not realize that S.B. had a cause of action that only they could assert on her behalf.  Therefore, her claim could not have accrued until she reached the age of majority because there was no person capable of bringing a cause of action on her behalf before then.

As S.B.'s situation illustrates, it defies logic to place the onus on children to have a sufficiently sophisticated understanding of the legal system to realize that they may have a cause of action and to bring it to the attention of a parent or qualified representative in a timely fashion.  Such a policy will often result in the expiration of a minor's claims before they have the opportunity to enforce their

own rights, which is contrary to "the Legislature's well-evidenced intention to provide broad protection for children." *See S. Ct. Adept*, 271 So. 3d at 880.[7]

The tolling statute comes into play only *after* a minor's claim has accrued and the minor subsequently is without a parent or guardian for a period of time.  In such a circumstance, the running of the statute of limitations is paused until there exists another person capable of bringing the suit.  It would be irrational to include language in the tolling statute about a parent or qualified representative's knowledge of a cause of action when it addresses a set of circumstances where no such person exists.  The nonexistence of a parent or qualified representative is obviously distinguishable from the case of delayed accrual where a minor and an existing parent or qualified representative lack knowledge of the minor's potential cause of action.

Because S.B. was unaware of the harm that the abuse caused her and her parents were unaware of the abuse that she suffered, she was unable to bring her claims until she reached the age of majority in 2012.  Consequently, the four-year statute of limitations for her claim would not have expired until 2016, and she brought her claims within the statutory period.  Conversely, R.R.'s claims accrued

---

7.  If, however, a minor appreciates that he or she may have an actionable claim, the claim would probably accrue at the time that the minor gained such appreciation because the burden would arguably be on the minor to notify a qualified representative of the cause of action.  However, this is not the situation that we now consider.

when she told her parents of the abuse shortly after it occurred; therefore, the statutory period expired long before she filed the action at issue.

For these reasons, I would hold that the minors' respondeat superior claims are timely under section 95.11(7), and I would hold that all of S.B.'s claims against the defendants did not accrue until she reached the age of majority and thus were timely brought.  Accordingly, I respectfully dissent.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fifth District - Case No. 5D16-4148

(Orange County)

Susan W. Fox and Wendy S. Loquasto of Fox & Loquasto, Tallahassee, Florida; Chad A. Barr of Law Office of Chad A. Barr, P.A., Altamonte Springs, Florida; and Griffith Winthrop III of Alvarez, Winthrop, Thompson & Storey, P.A., Orlando, Florida,

for Petitioners

Ronald P. Ponzoli, Richard L. Barry, and Amanda R. Keller of Gray Robinson, P.A., West Palm Beach, Florida; and Michael R. D'Lugo of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, Florida,

for Respondents The Southeastern District of the Christian and Missionary Alliance d/b/a The Alliance Southeast and The Christian and Missionary Alliance, Inc.

David J. Pascuzzi and Steve G. Schwartz of Schwartz Law Group, Boca Raton, Florida; and Melinda S. Thornton of Cole Scott & Kissane, P.A, Miami, Florida,

for Respondents NLCC, Ron Heffield and Priscilla Heffield